1   BARRY J. PORTMAN
    Federal Public Defender
2   STEVEN G. KALAR
    Assistant Federal Public Defender
3   450 Golden Gate Avenue
    San Francisco, CA 94102
4   Telephone: (415) 436-7700
5
6   Counsel for Defendant Cardenas-Garcia
7
8                   IN THE UNITED STATES DISTRICT COURT
9
10          FOR THE NORTHERN DISTRICT OF CALIFORNIA
11
12  UNITED STATES OF AMERICA,              )  No. CR  08-00333 PJH
                                           )
13          Plaintiff,                     )
                                           )  DEFENDANT'S
14                                         )  SENTENCING
        v.                                 )  MEMORANDUM
15                                         )
16  CARLOS CARDENAS-GARCIA,                )
                                           )  **Sentencing Hearing Date**:
17          Defendant.                     )  Wednesday, September 3, 2008
    _____)  at 1:30 p.m.
18
19
20
21
22
23
24
25
26
27
28

1
2

**Table of Contents**

3
4

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5

Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

6

Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

7
8

I.    The "Instant Offense  of Being "Found In  the United States Ended When
      Cardenas-Garcia was Detected by ICE on November 9, 2007 . . . . . . . . . . . . . . . 4

9
10

II.   Mr. Cardenas-Garcia's Pretrial Detention After His November 2007 Arrest Does
      Not Constitute a "Criminal Justice Sentence  or a "Term of Imprisonment  . . . . 6

11
12

III.  The Government's Arguments in Support of the Presentence Report's Position are
      Unpersuasive . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

13

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Table of Authorities**

**Federal Cases**

*United States v. Coeur*, 196 F.3d 1344 (11th Cir. 1999) . . . . . . . . . . . . . . . . . . . 12, 13, 14

*United States v. Gomez*, 38 F.3d 1031 (8th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Guzman-Bruno*, 27 F.3d 420 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . 4, 5

*United States v. Hernandez*, 189 F.3d 785 (9th Cir. 1999) . . . . . . . . . . . . . . . . 4, 5, 6, 12

*United States v. Latimer*, 991 F.2d 1509 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*United States v. Rivera-Ventura*, 72 F.3d 277 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Sanchez-Rodriguez*, 161 F.3d 556 (9th Cir. 1998) . . . . . . . . . . . . . . . . 4

*United States v. Santana-Castellano*, 74 F.3d 593 (5th Cir. 1996) . . . . . . . . . . . . . . . . 5

*United States v. Staples*, 202 F.3d 992 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Stewart*, 49 F.3d 121 (4th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . 9

**Federal Statutes**

8 U.S.C. § 1326(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

**Federal Sentencing Guidelines**

USSG § 4A1.1 (Nov. 1, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

USSG Manual, ch. 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

BARRY J. PORTMAN
Federal Public Defender
STEVEN G. KALAR
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700

Counsel for Defendant Cardenas-Garcia

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR  08-00333 PJH |
| | ) | |
| Plaintiff, | ) | DEFENDANT'S |
| | ) | SENTENCING |
| v. | ) | MEMORANDUM |
| | ) | |
| CARLOS CARDENAS-GARCIA, | ) | |
| | ) | **Sentencing Hearing Date**: |
| Defendant. | ) | Wednesday, September 3, 2008 |
| | ) | at 1:30 p.m. |

**Introduction**

The sole legal issue in this fast-track Section 1326 sentencing in whether Mr. Cardenas-Garcia is in Criminal History Category III, or in Criminal History Category IV. The parties agree that the defendant should be sentenced at the low end of offense level 13 and either Criminal History III or IV: eighteen or twenty-four months, respectively.

Because the presentence report incorrectly assigns additional Criminal History points to the defendant when he was in custody– but not under a "criminal justice sentence  – the correct Criminal History Category is III, and the correct sentence, eighteen months.

1

**Background**

2        The gravamen of the present dispute is an interpretation of Sentencing Guideline

3   Section 4A1.2(d) and (e). Subsection (d) directs that two additional Criminal History

4   points shall be added if the instant offense took place while the defendant while serving

5   another criminal justice sentence:

6        Add **2** points if the defendant committed the instant offense while under any
         criminal justice sentence, including probation, parole, supervised release,
7        imprisonment, work release, or escape status.

8
9   USSG § 4A1.1(d) (Nov. 1, 2007) (emphasis in original).

10       In the present case, the presentence report assigns these additional two points, "as

11  the defendant committed the instant offense while under a criminal justice sentence

12  imposed on January 18, 2008, in case number 2341871 [a January 2008 marijuana

13  conviction].  *See PSR* at 5 ¶ 10.

14       Subsection (e) adds one or two additional points "if the defendant committed the

15  instant offense less than two years after release from imprisonment.   USSG § 4A1.1(e)

16  (Nov. 1, 2007).

17       The Presentence Report assigns one additional point "as the defendant committed

18  the instant offense less than two years following release from imprisonment in case

19  number 2341871 [a January 2008 marijuana conviction].  *See PSR* at 5 ¶ 10.

20       Because the Presentence Report misinterprets the guidelines and the chronology of

21  this case, it erroneously assigns these three additional points. Mr. Cardenas-Garcia

22  actually committed the instant offense of being "found in   the United States in November

23  2007, long before the "criminal justice sentence   for the state marijuana case was

24  imposed on January 18, 2008.

25       The November 9, 2007 "found in   date is revealed in an e-mail exchange between

26  AUSA Supervisor Gregg Lowder and ICE Special Agent Cesar Lopez. On Cinco de

27  Mayo of this year (ironically) AUSA Supervisor Gregg Lowder solicited new illegal

28  reentry cases from an ICE Agent, writing, "Do you all have any 1326s coming our way?

We're looking for more – .   *Exh. A, E-Mail of Lowder to ICE Agent Cesar Lopez of May 5, 2008.*

ICE Special Agent Lopez dutifully responded to this solicitation:

Mr. Lowder,

Here is a late referral from San Francisco County Jail. **The ICE hold was placed on 11/9/2007**. I have brought this to the attention of my supervisor. Please advise me at your earliest convenience of your decision. I will be leaving for the rest of the day to drop of (sic) a file at your office.

*Id.* (emphasis added).

On November 9, 2007 – when Mr. Cardenas-Garcia was detected by ICE and the ICE hold was placed – the defendant had not been convicted of the state marijuana offense referenced in the PSR. *See PSR* at 5 ¶ 8. In November of 2007, Mr. Cardenas-Garcia was in pretrial custody. Indeed, he was not convicted of any offense for two additional months, finally pleading guilty to a small sale of marijuana on January 10, 2008. *Id.*

To recap, the chronology is as follows:

• **November 8, 2007**: Cardenas-Garcia arrested for sale of a $20 bag of marijuana and taken to San Francisco County jail. *PSR* at 5 ¶ 8;

• **November 9, 2007**: ICE detects Cardenas-Garcia at the San Francisco County jail and places a hold on the defendant. *Exh. A, E-mail of Agent Cesar to AUSA Lowder*;

• **January 10, 2008**: Mr. Cardenas-Garcia pleads guilty to felony sale of a $20 bag of marijuana to an undercover officer. *PSR* at 5 ¶ 8;

• **May 5, 2008**: AUSA Lowder solicits new 1326 cases from an ICE agent. *Exh. A, E-mail AUSA Lowder to Agent Cesar*;

• **May 5, 2008**: Agent Cesar responds and offers the *Cardenas-Garcia* case for

1    federal Section 1326 prosecution. *Id.*[1]

2    The legal question is thus whether on November 9, 2007, Mr. Cardenas-Garcia

3    "committed the instant offense (being found in the United States without permission of

4    the Attorney General) "while under any criminal justice sentence. USSG § 4A1.1(d).

5    The defendant did not commit the instant offense while under any criminal justice

6    sentence, because he had not been convicted of the marijuana sale in November of 2007,

7    when he was detected by ICE.

8                                    **Discussion**

9    **I.    The "Instant Offense" of Being "Found In" the United States Ended When**

10   **Cardenas-Garcia was Detected by ICE on November 9, 2007**

11   Mr. Cardenas-Garcia has pleaded guilty to being "found in the United States

12   without have obtained the permission of the Attorney General to re-enter, in violation of

13   Section 1326 of Title 8. That statute provides that any deported alien who "enters,

14   attempts to enter, or is at any time found in, the United States without permission is

15   guilty of a felony. 8 U.S.C. § 1326(a). In the Ninth Circuit, the "found in offense under

16   Section 1326 is a continuous crime – *but the offense terminates upon the defendant's*

17   *detection. United States v. Hernandez*, 189 F.3d 785, 790 (9th Cir. 1999); *United States v.*

18   *Guzman-Bruno*, 27 F.3d 420, 422-23 (9th Cir. 1994).

19   In *Hernandez*, the Court held that prosecution of a defendant outside of the venue

20   where he was detected "was improper because the defendant *committed and completed*

21   the offense of being 'found in' the United States when he was detected by the INS. 189

22

23   _____

24   [1] There is no explanation for why ICE waited from November 9, 2007 until May 5,
     2008 to refer this case for illegal reentry prosecution. Indeed, if this case was an "open
25   plea that seven-month delay would be a basis for a downward departure, in light of the
     lost opportunity to serve concurrent state and federal time. *See United States v.*
26   *Sanchez-Rodriguez*,161 F.3d 556 (9th Cir. 1998) (*en banc*). In this jointly-recommended
     11(c)(1)(C) plea agreement, however, the defense has waived any right to seek downward
27   departures.
28

1    F.3d at 786 (emphasis added).  The INS had detected Hernandez in Oregon, but
2    transported him to Eastern Washington where he had an outstanding state warrant for
3    cocaine possession.  *Id*. at 787.  After serving a prison sentence for the cocaine charges,
4    the defendant was prosecuted in Eastern Washington for the Section 1326 offense, where
5    he challenged venue.  *Id*.

6         The government in *Hernandez* argued that because Section 1326 is a continuous
7    offense, "the defendant's presence in a judicial district, for any reason, constitutes a
8    violation  of Section 1326.  *Id*. at 788.  The Court rejected this argument, holding that "it
9    is a crime for a deported alien to remain in the United States until he is 'found' by the
10   authorities.  The INS's act of discovering or finding the defendant completes the
11   offense.   *Id*. at 790.

12        The Court in *Hernandez* relied in part on *Guzman-Bruno* for the proposition that
13   INS's discovery of the defendant terminates the offense.  *Id*. at 789. Specifically, the cited
14   portion of *Guzman-Bruno* states that "[a] violation of 8 U.S.C. § 1326 for being found in
15   the United States after a prior deportation is a continuing offense which continues so long
16   as the alien remains in the country.   27 F.3d at 422-23 (internal citation omitted).

17        Although *Hernandez* is a venue case, its holding controls the present inquiry – for
18   the Ninth expressly relied upon statute of limitation and guideline inquiries in its analysis.
19   In *Hernandez*, the Court expressly relied on other circuit's reasoning in determining
20   "*when* a defendant completed the offense of being 'found in' the United States, for
21   purposes of the statute of limitations or the Sentencing Guidelines.   *Id*. (emphasis in
22   original) (*citing United States v. Santana-Castellano*, 74 F.3d 593, 598 (5th Cir. 1996) for
23   the proposition that "a 'found in' violation is a continuing violation until the date the alien
24   is discovered by immigration authorities;  *United States v. Rivera-Ventura*, 72 F.3d 277,
25   282 (2d Cir. 1995) for the proposition that a § 1326 offense "is not complete until the
26   authorities . . . discover the illegal alien in the United States;  *United States v. Gomez*, 38
27   F.3d 1031, 1035 (8th Cir. 1994) for the proposition that "a 'found in' violation is a
28   continuing violation that is not complete until the alien is 'discovered by immigration

1  authorities  ).  The Ninth Circuit reasoned that "[b]y articulating the act that triggers *when*
2  a § 1326 violation is committed - *the alien's discovery by immigration authorities* - these
3  cases also provide a limit on *where* venue may lie.   *Hernandez*, 189 F.3d at 790 (second
4  italics added; first and third italics in original).

5        The reasoning of *Hernandez*, as well as of the out-of-circuit cases upon which it
6  relies, is logical: Once an individual enters custody and ICE places a detainer on him or
7  her, his or her illegal presence in the United States is no longer voluntary. One should not
8  be subject to prosecution for a crime he or she is committing against his or her will.
9  *Hernandez* makes clear that Mr. Cardenas-Garcia's commission of the present offense
10  terminated when he was detected by ICE on November 9, 2007 and an ICE hold was
11  lodged.  Cardenas-Garcia did not continue to commit the instant offense through January
12  10, 2008, the date his sentence for the state marijuana offense was imposed.

13        Because the "instant offense   was completed on November 9, 2007 – when the
14  defendant was detected – and because Cardenas-Garcia was not serving a criminal justice
15  sentence on that date, it is incorrect to assign him two additional criminal history points
16  for serving a criminal justice sentence under Guideline Section 4A1.1(d). Moreover, it is
17  incorrect to assign the defendant the additional point under Section 4A1.1(e), because on
18  November 9, 2007 he did not "commit the instant offense   "while in imprisonment   for
19  the marijuana case.

20  **II.    Mr. Cardenas-Garcia's Pretrial Detention After His November 2007 Arrest**
21  **Does Not Constitute a "Criminal Justice Sentence" or a "Term of**
       **Imprisonment"**
22
23        The plain language of the Guidelines reveals that Mr. Cardenas-Garcia is not
24  subject to sentencing enhancements under § 4A1.1(d) or (e).  These Guidelines instruct:

25        (d) Add **2** points if the defendant committed the instant offense while under
       any criminal justice sentence, including probation, parole, supervised
26      release, imprisonment, work release, or escape status.

27        (e) Add **2** points if the defendant committed the instant offense less than
       two years after release from imprisonment on a sentence [of at least sixty
28

1    days] or while in imprisonment or escape status on such a sentence.  If **2**
2    points are added for item (d), add only **1** point for this item.

3    USSG § 4A1.1(d),(e) (Nov. 1, 2007).

4    The commentary to this guideline lists the various situations that count as a
5    "criminal justice sentence   – including "probation, parole, supervised release,
6    imprisonment, work release, or escape status.   *See* USSG § 4A1.1 comment. n.4.
7    Conspicuously (and logically) absent from this list is *pretrial* detention. This makes sense,
8    for before a conviction a defendant is constitutionally presumed to be innocent. On
9    November 9, 2007, Mr. Cardenas-Garcia was presumed innocent of any marijuana sale
10   charges: he was being held on pretrial detention on the marijuana charge, and had an ICE
11   hold preventing his release. A guideline that increased the criminal history *merely for an*
12   *arrest* (which is what the PSR urges in the present case) would seriously infringe upon
13   the constitutional presumption of innocence.

14   Guideline 4A.1 does not add additional points under either subsection (d) or (e) for
15   being detected by ICE after being *arrested* for another offense; the PSR and the
16   government err when they claim it does.

17   Moreover, the term "criminal justice sentence   is defined in the commentary to the
18   guideline as "a sentence countable under § 4A1.2.   USSG § 4A1.1(d) cmt. n.4. Turning
19   to Guideline § 4A1.2, there is an extensive guide for determining what constitutes a
20   "criminal justice sentence.   Post-arrest, pretrial custody is *not* listed. *See* USSG § 4A1.2.

21   Similarly, the commentary to § 4A1.1(e) states: "Two points are added if the
22   defendant committed any part of the instant offense . . . less than two years following
23   release from confinement on a sentence counted under § 4A1.1 (a) or (b).   USSG §
24   4A1.1(e) cmt. n.5.  Sections 4A1.1(a) and (b) adopt the same definition of "sentence,   but
25   assign different enhancements based on the length of time served. *See* USSG §§ 4A1.1
26   (a), (b).  Both provisions define "sentence   according to USSG § 4A1.2(b), which states
27   that a sentence "means a sentence of incarceration and refers to the maximum sentence
28   imposed.   "Sentence   does not mean post-arrest, pretrial custody.

1    It also bears emphasis that the application notes to § 4A1.2(b) state that "[t]o

2    qualify as a sentence of imprisonment, the defendant must have actually served a period

3    of imprisonment on such sentence.    USSG § 4A1.2, cmt. n.2.  The Sentencing

4    Commission's choice of the language "must *have* actually served   demonstrates that a

5    qualifying sentence need to have occurred in the past.

6        The language of all of these Guidelines provisions – §§ 4A.1(d), 4A.1(e),

7    4A1.2(a), and 4A1.2(b) – reveals that Mr. Cardenas-Garcia is not subject to enhancement

8    under §§ 4A1.1(d) or (e), because when he was detected by ICE on November 9, 2007 he

9    was not serving a "criminal justice sentence.

10        Authority from several federal circuits confirms Mr. Cardenas-Garcia's reading of

11    the Guidelines.  In *United States v. Latimer*, 991 F.2d 1509, 1517 (9th Cir. 1993), the

12    Court rejected the notion that pretrial or pre-parole hearing detention was "incarceration

13    simply because a defendant is "physically confined between the walls of a . . . prison.

14    The defendant in *Latimer* had been arrested for parole violations, and spent ninety days in

15    custody awaiting his parole hearing.  *Id*.  The Court framed this time as "entirely

16    administrative in nature,   because it was due to a *suspicion* that he had violated his

17    parole, rather than an adjudication of guilt.  *Id*.  As such, "when the reason behind a

18    period of incarceration is administrative necessity, rather than an adjudication of guilt,

19    this period of incarceration says nothing about the defendant's culpability.  Accordingly,

20    it may not provide a basis for sentence enhancement.   *Id*.

21        To further support its conclusion, the Ninth Circuit noted that a defendant's

22    detention while awaiting a parole hearing is "analogous to pre-trial custody.   *Id*.

23    Although the Court did not further elaborate on this analogy, its reasoning is clear: The

24    conclusion that a defendant's custody pending his parole hearing does not constitute

25    "incarceration   as defined by the Guidelines stems from the fact that pretrial custody

26    likewise is not "incarceration.   Like the defendant in *Latimer*, Mr. Cardenas-Garcia's

27    pretrial arrest was purely administrative.  No court had found him guilty of the marijuana

28    offense for which he had been arrested.  Therefore, pursuant to *Latimer*, his time spent in

1  pretrial custody may not provide a basis for sentence enhancement under Guideline

2  Section 4A1.1.

3      The Fourth Circuit has also expressly held that pretrial confinement does not

4  constitute a sentence of imprisonment.  In *United States v. Stewart*, 49 F.3d 121, 122-23

5  (4th Cir. 1995), the Court held that the defendant's detention while awaiting a parole

6  violation hearing did not amount to a sentence of imprisonment under the Sentencing

7  Guidelines.  In *Stewart*, the defendant had been arrested for violating the terms of his

8  state parole, and he served twenty-four days in custody while awaiting his hearing.  *Id*. at

9  122.  Although the state court found the defendant guilty of violating his parole, it did not

10  revoke his parole or reimpose a sentence.  *Id*.  Still, the district court found that the

11  defendant's detention served as an extension of a prior sentence, and met the recency

12  requirement of § 4A1.1(e).  *Id*. at 121.  The Fourth Circuit vacated the sentence, holding

13  that "there exists no basis for a holding that a detention awaiting the commencement of a

14  parole revocation hearing amounts to an extension of an original 'imprisonment on a

15  sentence' within the meaning of the Sentencing Guidelines.  *Id*. at 122-23.

16      *Latimer* and *Stewart* are directly analogous to Mr. Cardenas-Garcia's case.  In

17  *Stewart*, the Court astutely observed that a reading of § 4A1.1(e) to allow the defendant's

18  pre-hearing detention to qualify as a sentence of imprisonment

19         would lead to absurd results. . . .  [A]n individual who had been arrested on
          a parole violation warrant less than two years prior to the commission of an
20        instant offense, but found not to have been in violation of his parole and
          released, would still be assessed criminal history points under USSG §
21        4A1.1(e) merely because he had been detained at the same time that he was
          on parole and only so that a hearing might be held.
22

23
   *Id*. at 124.  The Court in *Latimer* similarly noted that "[t]he consequences of counting
24
   pre-revocation custody as incarceration would be unthinkable: defendants would have
25
   their sentences enhanced even if it were later determined at their hearings that they had
26
   *not* violated parole.  *Latimer*, 991 F.2d at 1517.
27
       Similarly, were this Court to accept the PSR's interpretation of the Guidelines, Mr.
28

1   Cardenas-Garcia would face a sentence enhancement under § 4A1.1(d) and (e) even if he

2   had been *acquitted* of the marijuana charges at the San Francisco Hall of Justice. The

3   Sentencing Commission surely did not contemplate such a bizarre result.

4        When Mr. Cardenas-Garcia was sentenced for the state marijuana offense – two

5   months *after* the commission of the instant Section 1326 offense – he was credited for the

6   time he served in custody following his November 8, 2007 arrest. This fact is of no

7   import. A court's decision to give a defendant credit for time served does not, *nunc pro*

8   *tunc*, place the date of sentencing two months into the past.

9        To allow for such an interpretation would yield anomalous results. A sentencing

10  court's decision to credit a defendant with time served represents the court's recognition

11  that the nature of the offense and the characteristics of the defendant allow for a shorter

12  custodial punishment. A sentencing court is not required to give a defendant credit for

13  time served, but does so as an exercise of leniency. As such, the more serious the

14  offense, the less likely the sentencing court is to credit the defendant with time served.

15  Had the court in Mr. Cardenas-Garcia's case declined to credit him with time served – an

16  indication that the judge found his offense to be more serious and more deserving of

17  punishment – the Government would have no argument that he meets the requirements

18  for enhancement under USSG § 4A1.1(d) or (e). A reading of the Guidelines that allows

19  for this counterintuitive result is absurd, and is contrary to the Guidelines' stated purpose

20  to "assure the ends of justice. USSG MANUAL, ch. 1, pt. A1.

21       Although the Ninth Circuit has not expressly addressed the question of whether a

22  post-offense sentencing, which credits the defendant for time served prior to the instant

23  offense, would make a defendant eligible for enhancement under § 4A1.1(d) and (e),

24  other circuit courts have examined the issue. In *United States v. Staples*, 202 F. 3d 992,

25  997-98 (7th Cir. 2000), the Court analyzed whether credit for time served on a separate

26  charge constituted a "sentence of imprisonment   under USSG § 4A1.2. The defendant in

27  *Staples* had served a 250-day jail sentence for violating his probation, and was given full

28  credit for 250 days served on a subsequent conviction for driving with a suspended

1  license. *Id*. at 997.  Recognizing that the sentencing court had applied credit for time

2  served on one offense to an entirely separate offense, the Court affirmed the conviction.

3  *Id*. at 998.  However, the *Staples* Court aptly noted: "Had Staples *been held without bail*

4  *while awaiting trial*, that time could not be counted as a sentence of imprisonment, but

5  being given credit for time served on another offense is a different story.   *Id*. at 997-98

6  (emphasis added).

7      The Court's analysis in *Staples* supports the defense position that the time Mr.

8  Cardenas-Garcia spent being "held without bail while awaiting trial   cannot be counted as

9  a sentence under USSG § 4A1.1(d) or (e).

10      An expert at the United States Sentencing Commission has confirmed Mr.

11  Cardenas-Garcia's position that enhancements under §§ 4A1.1(d) and (e) would be

12  improper. Alan Dorhoffer, an attorney who serves as Deputy Director of the Sentencing

13  Commission's Office of Education and Sentencing Practice, stated that – assuming the

14  commission of a § 1326 offense terminates upon detection – application of additional

15  criminal history points would be improper under § 4A1.1(d) because a mere arrest does

16  not constitute a "criminal justice sentence.   *Telephone interview by Abby Sullivan with*

17  *Alan Dorhoffer, Deputy Director, U.S. Sentencing Comm'n Office of Educ. & Sentencing*

18  *Practice* (Aug. 8, 2008).  Mr. Dorhoffer stated that an additional point under § 4A1.1(e)

19  would likewise be improper, because such an enhancement presumes that the time Mr.

20  Cardenas-Garcia spent in custody following his arrest in the state marijuana case

21  constituted "confinement on a sentence.   *Id*.  Mr. Dorhoffer unequivocally stated (and

22  common knowledge dictates) that time served in custody following an arrest but prior to

23  any adjudication of guilt by a criminal court does not constitute a criminal justice

24  sentence, regardless of whether the defendant is later credited for that time.  *Id*.

25  **III.    The Government's Arguments in Support of the Presentence Report's**

26  **Position are Unpersuasive**

27      It is anticipated that the government will offer two primary arguments in support of

28  the PSR's assignment of these three additional criminal history points (and placement in

1     Criminal History Category IV). First, the government will argue that Mr. Cardenas-Garcia

2     pleaded guilty to being found on May 5, 2008 (the date charged in the indictment) –

3     therefore, that is the effective date for the USSG § 4A1.1(d) and (e) analysis. Second, the

4     government will presumably rely on an Eleventh Circuit case, *United States v. Coeur*, 196

5     F.3d 1344 (11th Cir. 1999), in support of the argument that these three criminal history

6     points should count. Neither argument is persuasive.

7        First, the date charged in the indictment and admitted in the plea colloquy is not

8     relevant to this guideline question. The parties cannot, by alleging or admitting a

9     particular date of detection, change controlling Ninth Circuit authority on when a Section

10    1326 offense ends. In the Ninth Circuit, Section 1326 offenses end upon detection – and

11    in this case, it ended on November 9, 2007, when an ICE hold was lodged. *See*

12    *Hernandez*, 189 F.3d at 790.

13       Moreover, one can fairly ask what Mr. Cardenas-Garcia was to do? Go to trial and

14    "defend  his case by arguing that he was actually first detected by ICE on November 9,

15    2007 – and not on May 5, 2008? The fact that the government chose to allege a late date

16    in the indictment is no defense to the charges, and would not be the basis for a valid

17    defense at trial or a motion to strike surplusage.

18       It is the government – not the defense – which controls the date of detection

19    alleged in the indictment. It would be a particularly unjust result if the government could

20    manipulate the detection date alleged in the indictment in order to try to capture more

21    criminal history points.[2] That is particularly true in the present case when the late

22    detection date in the indictment reflects a *seven month delay* by ICE in referring the case

23    for prosecution. The Court should not reward significant ICE delays by adopting a made-

24    up May "detection  date that is presented to the grand jury.

25

26

---

27       [2] To be clear, there is no indication in the present case that AUSA Frick
deliberately alleged the May 2008 date – instead of the November 2007 date – in order to

28   increase the criminal history points.

1       Finally, the position of the government and Probation is flatly inconsistent with the

2   detection date urged in other illegal reentry cases. In Mr. Cardenas-Garcia's case, the

3   "late (May 2008) detection date would increase his sentence because it would sweep in

4   the January 2008 marijuana conviction.

5       In other illegal reentry cases, however, Probation and the government argue for the

6   *earliest reported* ICE detection or illegal reentry date – a date that is often far earlier than

7   the official detection date alleged in the indictment and admitted during the plea. In other

8   cases, Probation and the government have urged this earlier detection date in order to get

9   within two years of a prior custodial sentence, which increases the criminal history points

10   under Section 4A1.1(e).

11       It is an odd rule indeed which allows Probation to select whichever "detection

12   date that happens to generate the most criminal history points. The Court should reject

13   May 2008 as the determinative date in this case, because that date actually has no relation

14   to the factual, actual detection date of the defendant.

15       The government's anticipated reliance on the Eleventh Circuit's decision in *Coeur*

16   is equally unpersuasive. *United States v. Coeur*, 196 F.3d 1344 (11th Cir. 1999). In

17   *Coeur*, the illegal reentry defendant was found by the INS in the United States "while he

18   was serving another sentence. *Id.* at 1345. The Eleventh Circuit held that the district

19   court properly applied Section 4A1.1(d) of the guidelines. *Id.*

20       In *Coeur*, however, the INS detected the defendant *"while he was serving another*

21   *criminal justice sentence." Id.* (emphasis added). The INS in *Coeur* had not detected the

22   defendant during post-arrest, pretrial custody on another criminal justice sentence – as is

23   true in the present case. *Coeur* thus adds nothing to the analysis of the present issue

24   before this Court.

25       Notably, in the *Coeur* decision the government argued exactly the opposite what

26   the government is now arguing before this Court. In this Eleventh Circuit decision, the

27   government expressly argued that the crime of being "found in was completed *on*

28   *discovery*:

1

2      The government counters that because Coeur entered a plea of guilty for being
       "found in   the United States, *a crime which was not completed until the INS*
3      ***discovered him***, the date of his re-entry is irrelevant and an enhancement under §
       4A1.1(d) was proper because he was actually under a criminal justice sentence
4      when he was found by the INS.

5   *Id.* (emphases added). The government in *Coeur* was right; the government here, wrong:

6   the "found in   crime under Section 1326 ends when immigration agents detect the alien.

7   In the present case, that date was November 7, 2007 – long before the conviction for

8   which additional criminal history points are being credited in the PSR.

9                                  **Conclusion**

10       For the foregoing reasons, Mr. Cardenas-Garcia respectfully requests that the

11  Court direct that the PSR be correct, that it find the defendant to be in Criminal History

12  Category III, and that it impose a sentence of eighteen months of custody.

13

14  Dated: August 20, 2008

15                                   Respectfully submitted,

16
                                     BARRY J. PORTMAN
17                                   Federal Public Defender

18
                                     /s
19
                                     STEVEN G. KALAR
20                                   Assistant Federal Public Defender

21

22

23

24

25

26

27

28

# EXHIBIT A

Gregg

---

**From:** Lopez, Cesar J [mailto:Cesar.Lopez@associates.dhs.gov]
**Sent:** Monday, May 05, 2008 2:13 PM
**To:** Lowder, Gregg (USACAN)
**Cc:** Waldinger, Kyle (USACAN)
**Subject:** RE: CARDENAS/A79 380 421

Mr. Lowder,

Here is a late referral from San Francisco County Jail.  The ICE hold was placed on 11/9/2007.  I have brought this to the attention of my supervisor.  Please advise me at your earliest convenience of your decision.  I will be leaving for the rest of the day to drop of a file at your office.

Thanks,

Cesar

---

**From:** Lowder, Gregg (USACAN) [mailto:Gregg.Lowder@usdoj.gov]
**Sent:** Monday, May 05, 2008 1:42 PM
**To:** Lopez, Cesar J; Kaiser, Polly E
**Cc:** Waldinger, Kyle (USACAN)
**Subject:** 1326s?

Do you all have any 1326s coming our way?  We're looking for more –

THANKS,

Gregg

Gregg W. Lowder

Assistant U.S. Attorney

450 Golden Gate Avenue, 11th Floor

San Francisco, Ca 94102

(415) 436-7044

5/6/2008